**IN THE UNITED STATES DISTRICT COURT DISTRICT OF KANSAS**

| | |
|---|---|
| **VIRGINIA FRANZESE, As NEXT FRIEND** minor child, O.O.<br><br>                              Plaintiffs,<br><br>v.<br><br>**BLUE VALLEY U.S.D. 229**<br>**Please serve at:**<br>Blue Valley USD 229<br>15020 Metcalf Ave.<br>Overland Park, KS 66223<br><br>**CHRIS LEGLEITER**<br>Please serve at:<br>Blue Valley USD 229<br>15020 Metcalf Ave.<br>Overland Park, KS 66223<br>                              Defendants. | Case No.:<br><br>Division: |

**COMPLAINT**

COMES NOW Virginia Franzese, on behalf of her minor child O.O. ("Plaintiff") by and through their counsel to seek redress for harm suffered as a result of Defendant Blue Valley School District and its agent Principal Chris Legleiter's conduct.

**PARTIES**

1.      Virginia Franzese represents her minor child, O.O. ("O.O." or "Plaintiff") who is a transgender male and resident of the State of Kansas.

2.      Defendant Blue Valley Unified School District 229 ("Blue Valley" or "School District") is a Kansas school district located at 15020 Metcalf Ave, Overland Park, Kansas 66223. Leawood Middle School ("LMS") is a middle school of the Defendant School District. The School District is a governmental entity created to provide public education to children within its boundaries.

3. Blue Valley acts through its employees and agents, all of whom were acting withing their scope of employment and/or agency during the events described herein.

4. At all times material Defendant Chris Legleiter (Legleiter), was an employee of Defendant Blue Valley and is being sued in his individual and official capacity.

## JURISDICTION AND VENUE

5. This case is arising under 42 U.S.C § 1983. Title IX of the Civil Rights Act of 1964, 42. U.S.C. § 20004 et seq, and the Unconstitutional Policy, Custom and Practice Clause of the Fourteenth Amendment, the Substantive Rights Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Due Process Clause of the Fourteenth Amendment of the United States Constitution. As such, Plaintiff has presented a federal question and the court has jurisdiction over Plaintiff's claims pursuant to U.S.C § 1331 and § 1367.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the events and omissions giving rise to the claim occurred in this District.

## FACTS COMMON TO ALL COUNTS

7. O.O. was a student at LMS during the 2021-2022 school year.

8. Prior to his enrollment in LMS, O.O. attended an elementary school in Blue Valley where he was diagnosed with ADHD and social anxiety that required Blue Valley to create a 504-plan for O.O.

9. Plaintiff's mother anticipated the 504-plan be transitioned within the district from one school to the other upon O.O.'s graduation into middle school.

10. At the end of the 2020-2021 school year, O.O. began to identify as a transgender male. This was included in the 504-plan for O.O.

11. In the 2021-2022 school year, there was a slow transition of the 504-plan which included his new name, resulting in O.O. being identified by born name related to the gender he no longer identified with in front of the entire class during role call.

12. This brought attention and unrest to O.O. as he suffers from social anxiety and other students were vocalizing their awareness of the name and identity change.

13. In the coming weeks, LMS students created a 6th grade Snapchat group which included O.O. There, messages shared were of transgender and homophobic nature.

14. On September 19th, 2021, when Plaintiff's mother saw the messages and alerted Blue Valley and Legleiter of them, including screenshots, she requested that Blue Valley conduct sensitivity training concerned that the messages would have a negative impact on her child that was transgender.

15. Plaintiff was put in contact with the LMS social worker whom Plaintiff became very fond of.

16. In mid-November, O.O. was still facing challenges as accommodations were not being fully implemented in the 504-plan, causing additional difficulties in school and with peers as it relates to performance and expectations inside of the classroom in addition to bullying as it relates to gender conformality and social expectations regarding gender and sex.

17. November 21, 2021, Plaintiff expressed suicidal ideations to the social worker he'd grown fond of.

18. By the end of November, Plaintiff was officially diagnosed with depression caused by the bullying at school and given prescription medication to combat the emotional symptoms.

19. Plaintiff's mother retrieved Plaintiff from school and took him to be evaluated at the hospital for a safety assessment because it was noted that Plaintiff had begun cutting his arms and legs.

20. In mid-December, O.O. shared with his mother that there was a new student that had been bullying him both at school and via social media.

21. The new student was transferred to LMS due to her disruptive behavior and bullying at another school and was targeting O.O. by making comments about him being transgender and calling him a pedophile.

22. December 14th, 2021, O.O. stayed at home from school citing exhaustion from bullying.

23. Plaintiff's mother notified Blue Valley and Legleiter of the continued bullying.

24. A week later, the same student started rumors of O.O. mentioning religious beliefs, continued lies of pedophilia, and lies of terroristic threats that the student said O.O. was planning to make.

25. Because of the threat of safety, the entire 6th grade class was evacuated, but it was not brought to the Plaintiff's or his mother's attention that O.O. was the center of the rumor until

other students bombarded O.O. with screenshots informing him of the rumors the new student spread.

26. Learning about it, Plaintiff's mother contacted Defendant Legleiter, but because the proof was solely virtual, both local police and school administrators took no responsibility and provided no plan of recourse on how to deal with the continued bullying.

27. Plaintiff did not return to school for the remainder of the semester due to the pressures and fears of this incident, as well as lack of administrative support to safely continue.

28. In preparation for the upcoming semester, Plaintiff's mother contacted Defendants to inform them that Plaintiff did not feel safe at school and asked what could be done to protect O.O. No plan in relation to bullying was made.

29. On January 26th, 2022, Plaintiff took a razor blade and depression medication to school. Plaintiff told another student, and the student reported it to the social worker.

30. In February, Plaintiff's mother reported continuing sexual harassment from the same students, noting a group of 8th grade boys barking at him, calling him "faggot," and referring to him by his birth ("deadname") name.

31. Additionally, Plaintiff was still struggling in school as teachers and counselors were pushing for Plaintiff to participate in class in a manner that violated Plaintiff's 504-plan and exacerbated his anxieties.

32. Plaintiff's mother reported continued violations of the 504-plan to Legleiter that only had apologies to give – acknowledging the fault and its impact on plaintiff but making no changes to further prevent academic and social issues arising in Defendants' care.

33. On March 1st, 2022, seeing no progress and help with and from Defendants, Plaintiff's mother requested Plaintiff be on a reduced schedule where he would walk to and from school, less than a five-minute walk from home.

34. March 24th, 2022, Legleiter after much push-back agreed to the reduced schedule.

35. Bullying continued despite these efforts as on March 30th, 2022, Plaintiff was made aware that three students from the school started a TikTok account called "LMS emo" solely for the purpose of capturing videos of Plaintiff walking to and from school.

36. Plaintiff's mother complained to school administrators and Defendants, but the Defendants failed to provide any resources or courses of action to protect O.O.

4

37. Plaintiff's mother took it into her own hands to contact the students' parents. Of the three bullies, two of their parents were unapologetic, while the other was unphased and denied their son's participation. The TikTok was eventually taken down.

38. April 1st began the first day of reduced schedule where Plaintiff would attend school from 7:40am to 10am and 1pm to 2:45pm.

39. During this time, the dead name calling and barking continued.

40. Plaintiff was still burdened with the sexual harassment, with no help from Defendants, thus seeking more medical attention.

41. Plaintiff obtained a new psychiatrist, increased his meds, met with a case manager one to two times a week, was assigned a therapist, and began further treatments with Johnson County Mental Health.

42. On April 27th, Plaintiff returned to school to have lunch, when one of the three boys whose mother denied his involvement in bullying stood up in the cafeteria and started screaming "faggot" and teasing Plaintiff with his dead name.

43. The vice principal was supervising at the time and went to the boy to ask why he was screaming, and other students told the vp what occurred.

44. Plaintiff's mother contacted Legleiter noting the lack of action by Defendants and the risks it placed Plaintiff with.

45. Defendants did not investigate Plaintiff's complaint nor assign a Title IX coordinator to address the instances of harassment.

46. The principal agreed to give the bullying party one day of in-school suspension and no further plan of separation.

47. Later the same day, Plaintiff's mother went to plea with the bullying party's mother again, who rolled her eyes, demanded she get off of her property, and slammed the door.

48. That night, April 27th, 2022, Plaintiff took an extensive amount of his prescription pills and cut himself in a suicide attempt.

49. Plaintiff's mother found him and took him to the hospital where he thankfully had not ingested a lethal amount.

50. From there, Plaintiff was transferred to a mental health facility for in-patient treatment where he was there for nearly two weeks.

51. Plaintiff's mother informed Defendants of Plaintiff's suicide attempt and the direct correlation to the sexual harassment he had been experiencing leading to that moment. She asked for a written and strict plan regarding safety for her son, again suggesting sensitivity training.

52. Defendants were not willing to provide sensitivity training, and requested Plaintiff return to school with no plan of action for how the environment would prove safer.

53. Defendants did not provide any additional resources to make day to day life for Plaintiff safe from harm and sexual harassment.

54. Defendants offered to freeze Plaintiff's grades to create a pass/fail method of grading and relief from current work duties for the duration of the school year but did not provide any methods of how Plaintiff could obtain the information missed, emphasizing the days teachers would be off and all access to student materials would be shut off.

55. This was the only accommodation Defendants made in response to Plaintiff's suicide attempt due to the relentless bullying that occurred during their supervision.

56. With no plans to ensure safety, Plaintiff's mother, per healthcare recommendations, did not take O.O. back to LMS.

57. Plaintiff continues to suffer gravely from the sexual harassment endured at LMS including but not limited to displacement as Plaintiff moved schools, deepened traumas as it relates to trust and social anxiety, deepened depression, and continued suicidal ideations and attempts. These things are the direct result of Defendants' lack of care for his concerns, of policy, and of procedural training to adequately carry out any generalized or focal policies as it relates to sexual harassment and abuse in their jurisdiction.

## COUNT I:
## VIOLATION OF TITLE IX, 20 U.S.C. § 1681 *et seq.*, BY DEFENDANT BLUE VALLEY

58. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

59. This Federal civil rights law prohibits discrimination on the basis of sex, including discrimination based on sexual orientation and gender identity, in education programs and activities by which all public and private elementary and secondary schools, school districts, and collegiate schools receiving any Federal funds must comply.

60. Defendant does and has received Federal financial assistance and received such assistance throughout the period that O.O was a student.

61. Title IX prohibits sexual discrimination, sexual harassment, and gender stereotyping of students at the School District.

62. Defendant provides educational programs and services to its students.

63. O.O.'s bullies repeatedly targeted him based on his gender identity by using transphobic and homophobic slander to harass O.O. both on school grounds and virtually through the use of social media.

64. Plaintiff was sexually harassed at Blue Valley.

65. Plaintiff was discriminated against on the basis sex/gender at Blue Valley.

66. Plaintiff experienced gender stereotyping at Blue Valley.

67. Plaintiff informed Defendant of above treatment on multiple occasions.

68. Defendant acknowledged that students sexually harassed Plaintiff.

69. On multiple occasions Plaintiff requested sensitivity training be completed by all staff and students.

70. Defendant ignored requests for sensitivity training and bullying continued.

71. Defendant did not respond promptly and effectively to address the sexual harassment Plaintiff endured.

72. Plaintiff made a suicide attempt after facing severe hate speech on April 27th, 2022, and refrained from school for the remainder of the school year which ended May 20th, 2022.

73. The sexual harassment and sexual discrimination towards O.O. was so severe, pervasive, and objectively offensive that it effectively deprived him of access to educational benefits and/or opportunities provided by Defendant.

74. While at Blue Valley, Plaintiff was the target of hate speech, harassment, and bullying.

75. He was deadnamed, called a faggot, stalked, and recorded without his permission.

76. Defendant to no action to promptly investigate what occurred and take appropriate steps to resolve the situation.

77. Defendant took no action to eliminate the sexual harassment and violence Plaintiff experienced, prevent its recurrence, nor address its effects.

78. Following hospitalization and in-patient psychiatric treatments, noting Defendant's failure to respond promptly and effectively, Plaintiff's healthcare professionals suggested Plaintiff refrain from returning to school until safety conditions were rectified within Blue Valley.

79. Defendant had the authority to take corrective measures to prevent the sexual discrimination and assault, had knowledge of prior harassment, and acknowledged prior harassment as an issue.

80. Defendant insisted O.O. return to school alongside his harassers, whom he shared multiple classes with, without providing any actionable steps to immediately create a safe learning environment and prevent further sexual harassment.

81. Defendant's lack of appropriate action, response, notice, and verifiable reassurance completely deprived O.O. of the education and opportunities to which he is entitled to as a student.

82. A designated Title IX coordinator did not take Plaintiff's complaint nor did one oversee or address all instances of harassment.

83. A designated Title IX coordinator did not provide an adopted grievance procedure that led to a prompt and equitable resolution of Plaintiff's complaints.

84. A designated Title IX coordinator did not oversee an adequate, reliable, and impartial investigation of complaints that allow for the presentation of witnesses and other evidence, nor was there ever an official outcome of complaints made and thus no opportunity to appeal undesirable outcomes.

85. Defendant ignored requests for systemic intervention.

86. Through Defendant's lack of procedural steps to formally address the ongoing issues Plaintiff faced, Plaintiff was denied his right to written notification regarding the complaint process and outcome of complaints.

87. Subsequent to the sexual discrimination and harassment, Blue Valley continued to owe O.O. the right to an education free of bullying, harassment, and stereotyping.

88. Defendant acted with deliberate indifference by failing to enforce policies, and by failing to protect O.O.

89. The acts, omissions, conduct, and behavior of Defendant has caused O.O. to suffer physical injury, anxiety, depression, embarrassment, and emotional pain and suffering.

90. Also, as a result of the acts, omissions, conduct and behavior of Defendant, O.O. was deprived of the education and/or opportunities to which he is entitled as a student.

91. Plaintiff is entitled to recover from Defendant his reasonable attorneys' fees and expenses according to 43 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests the Court enter judgement in his favor against Defendant Blue Valley for compensatory damages, for attorneys' fees and expenses according to 42 U.S.C section 1988(b), for costs, and for such other and further relief as it deems and fair and equitable in the circumstances.

**COUNT II:**
**VIOLATION OF 42 U.S.C. § 1983 BY DEFENDANT BLUE VALLEY FOR DENIAL OF O.O.'S SUBSTANTIVE RIGHTS UNDER THE 14TH AMENDMENT – UNCONSTITUTIONAL POLICY, CUSTOM, AND PRACTICE**

92. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

93. Defendant Blue Valley is an official of the state of Kansas at all times relevant to this claim, Defendant was acting under color of state law.

94. Blue Valley acted under the color of law, through its employees in their capacities as employed by the School District, in their deprivation of Plaintiff's rights under the 14th Amendment of the United States Constitution that provides equal protection under the law, as well as life and liberty.

95. Defendant had a duty to provide a safe learning environment, free of sexual harassment, sexual discrimination, and gender stereotyping in a manner that did not deprive any student of life, liberty, or property without due process of law; nor deny any student within its jurisdiction the equal protection of the laws.

96. Defendant had authority to act reasonably in response to Plaintiff's series of instances and subsequent complaints of sexual harassment, sexual discrimination, gender stereotyping.

97. Defendant failed to adequately respond to known to instances of sexual harassment, sexual discrimination, and gender stereotyping.

98. Defendant's failure to adequately respond to the above-known instances reflects a deliberate indifference to the rights of Plaintiff.

99. Defendant has and had a duty to respond to known instances of sexual harassment, sexual discrimination, and genders stereotyping to not only protect Plaintiff from further undue harm, but also other children within their scope and supervision.

100. Every continued instance of abuse acknowledged, but unchanging to Blue Valley policies ensuring the adequate prevention of such behavior and protection of rights of children, exemplifies Defendant's persistent pattern of unconstitutional conduct and is representative of a deliberate indifference to Plaintiff's rights.

101. Defendant's failure to correct this custom and practice resulted in the perpetuated allowance for bullies to antagonize plaintiff on their grounds, an actual and proximate cause of constitutional deprivation which led to the sexual assault, abuse, harassment and bullying against Plaintiff.

102. Defendant's failure to correct this custom, usage, pattern, or practice represents a deliberate indifference to O.O. rights.

103. Defendant's failure was the actual and proximate cause of constitutional deprivations and sexual harassment, sexual discrimination, and gender stereo typing against O.O.

104. As a direct and proximate result of Defendant's deliberate indifference to known acts of constitutional deprivation, Plaintiff suffered severe damages, almost costing Plaintiff his life. Damages include but are not limited to denial of access to educational environment free from sexual harassment and abuse in an educational, physical, and psychological manner, trauma from attempted suicide attempt, pain and suffering, mental anguish, and loss of enjoyment of life, as well as past, present, and future medical expenses related to such injuries.

105. Plaintiff is entitled to recover from Defendant his reasonable attorneys' fees and expenses according to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests the Court enter judgement in his favor against Defendant Blue Valley for compensatory damages, for attorneys' fees and expenses according to 42 U.S.C section 1988(b), for costs, and for such other and further relief as it deems and fair and equitable in the circumstances.

## COUNT III:
## VIOLATION OF 42 U.S.C. § 1983 BY DEFENDANT BLUE VALLEY FOR DENIAL OF

## O.O.'S SUBSTANTIVE RIGHTS UNDER THE 14TH AMENDMENT – FAILURE TO TRAIN AND SUPERVISE

106. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

107. Blue Valley is an official of the state of Kansas, a recipient of federal funds, and at all times relevant was acting under the color of law.

108. Blue Valley acted under the color of law, through its employees in their capacities as employed by the School District, in their deprivation of Plaintiff's rights under the 14th Amendment of the United States Constitution that provides equal protection under the law, as well as life and liberty.

109. Defendant's employees failed to both identify and exemplify a formal procedure for the reports, investigations, and responses to inappropriate sexual acts, sexual harassment, sexual discrimination, and gender stereotyping between students, as well as open and sufficient communication throughout the process with victims and their parents/guardians.

110. Defendant's failure to identify and execute a strategic plan to protect Plaintiff's rights was a direct and proximate causation for repeated instances of sexual harassment, sexual discrimination, and gender stereotyping that deprived Plaintiff of a safe learning environment.

111. While Defendant had authority to discipline its students in accordance with the law and school policies, Defendant provided no reasonable recourse, plan of action, proposed new plan of action, nor factual basis for which Defendant could prove systematic protections against unconstitutional occurrences within their jurisdiction that occurred to Plaintiff.

112. Plaintiff requested on many occasions to implement a sensitivity training to both staff and students that Defendant initially ignored, and later, in response to Plaintiff's plea for help following suicide attempt, communicated requested training was deemed unnecessary.

113. Plaintiff asked for policies and procedures, as well as written recourse, in response to the harm done as a result of ongoing abuse at LMS and Defendant did not provide a Title IX policy, coordinator, or sensitivity instruction or curriculum that ensured current staff and students had adequate exposure to transgender and homosexual persons within their confines.

114. Plaintiff specifically addressed Defendant's policies researched that may have been able to forge a corrective path – but a well-fitted policy that required training for these circumstances did not exist and proposals for them by Plaintiff were unwelcome.

115. Training and other measures to protect school children from sexual abuse, sexual harassment, sexual discrimination, and gender stereotyping is necessary in the prevention of occurrences and recurrences of sexual acts resulting on within their jurisdiction, resulting in the violation of students' constitutional rights.

116. Defendant's failure to train, despite multiple requests and occurrences proving its necessity, reflects deliberate indifference to the rights of students, leading to the violation of their constitutional rights.

117. Defendant has and had an obligation to respond to known instances of sexual assault, sexual harassment, sexual discrimination, and gender stereo typing.

118. As a direct and proximate result of Defendant's deliberate indifference to known acts of constitutional deprivation, Plaintiff suffered severe damages, almost costing Plaintiff his life. Damages include but are not limited to denial of access to educational environment free from sexual harassment and abuse in an educational, physical, and psychological manner, trauma from attempted suicide attempt, pain and suffering, mental anguish and loss of enjoyment of life, as well as, past, present, and future medical expenses related to such injuries.

119. Plaintiff is entitled to recover from Defendant his reasonable attorneys' fees and expenses according to 42 U.S.C. § 1988(b).

Wherefore, Plaintiff respectfully requests the Court enter judgement in his favor against Defendant Blue Valley for compensatory damages, for attorneys' fees and expenses according to 42 U.S.C section 1988(b), for costs, and for such other and further relief as it deems and fair and equitable in the circumstances.

## COUNT IV:
## VIOLATION OF 42 U.S.C. § 1983 BY DEFENDANTS BLUE VALLEY AND LEGLEITER FOR DENIAL OF O.O.'S EQUAL PROTECTION RIGHTS UNDER THE 14TH AMENDMENT

120. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

121. Defendant Blue Valley is an official of the state of Kansas, recipient of Federal fund, and was acting under color of state law at all times relevant.

122. Blue Valley acted under the color of law, through its employees in their capacities as employed by the School District, in their deprivation of Plaintiff's rights under the 14th Amendment of the United States Constitution that provides equal protection under the law, as well as life and liberty.

123. Defendant Legleiter, during the relevant time was an employee of Defendant Blue Valley, a governmental entity, and acting under color of law in his deprivation of Plaintiff's rights under the 14th Amendment of the United States Constitution that provides equal protection under the law, as well as life and liberty.

124. O.O.'s right to equal protection under the law was clearly established at all times relevant to this claim.

125. Defendants were aware of O.O's right to equal protection under the law to be free of sexual assault, sexual abuse, sexual harassment, sexual discrimination, and gender stereotyping and failed to take steps to protect those rights.

126. Defendants were aware of and failed to provide a procedure for investigation of sexual assault, sexual abuse, sexual harassment, sex discrimination, and gender stereotyping.

127. Defendants' failure to reasonably fulfill their duty resulted in the continuous deprivation of O.O.'s right to equal protection under the law and to be free from sexual assault and harassment.

128. Defendants' failures represent an ongoing and persistent pattern of misconduct.

129. Defendants' failure to protect O.O from known sexual harassment, sexual abuse, and assault constituted a violation of his rights and was the result of discrimination against O.O based on his gender.

130. As a result of Defendants' failure to implement a systematic or personal recourse in response to such misconduct, Plaintiff was sexually assaulted and harassment to the point of complete overwhelm that led to Plaintiff's suicide attempt.

131. Even after Plaintiff's attempted to suicide, Defendants continued in their intentional, willful, and wanton display of deliberate, reckless, and callous indifference to Plaintiff's federally protected rights.

132. As a direct and proximate result of Defendants' deliberate indifference to known acts of constitutional deprivation, Plaintiff suffered severe damages, almost costing Plaintiff his life. Damages include but are not limited to denial of access to educational environment free from

sexual harassment and abuse in an educational, physical, and psychological manner, trauma from attempted suicide attempt, pain and suffering, mental anguish and loss of enjoyment of life, as well as past, present, and future medical expenses related to such injuries.

133. Plaintiff is entitled to recover from Defendants his reasonable attorneys' fees and expenses according to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests the Court enter judgement in his favor against Defendant Blue Valley and Defendant Legleiter for compensatory damages, for attorneys' fees and expenses according to 42 U.S.C section 1988(b), for costs, and for such other and further relief as it deems and fair and equitable in the circumstances.

### COUNT V:
### VIOLATION OF 42 U.S.C. § 1983 BY DEFENDANT LEGLEITER FOR DENIAL OF O.O.'S LIBERTY INTEREST IN BODILY INTEGRITY UNDER THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT

134. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

135. Defendant Legleiter, during the relevant time, was an employee of Defendant, a governmental entity, and acting under color of law.

136. Legleiter's actions and omissions impacted O.O's rights to a liberty interest in his bodily integrity under the Due Process Clause of the Fourteenth Amendment.

137. Plaintiff's rights to a liberty interest in his bodily integrity, and to be free of sexual assault, sexual harassment, sexual discrimination, and gender stereotyping were clearly established at all relevant times.

138. Defendant was aware of Plaintiff's liberty interest in his bodily integrity, and to be free of sexual assault and harassment, but failed to take adequate measures to protect those rights.

139. Plaintiff was placed at a significant risk of serious, immediate, and proximate harm while in Defendant's care as a result of his failure on multiple occasions to conduct a reasonable investigation into the primary bullies' behavior and conduct against Plaintiff despite many pleas for direction and assistance in this matter.

140. Defendant was aware of the risks posed in Plaintiff's interactions with his abusers as complaints were acknowledged prior to the ultimate altercation at LMS that prompted a suicide attempt by Plaintiff.

141. Emails citing Plaintiff refraining from school due to exhaustion from bullying dates back to December 14th, 2021.

142. Defendant had minimally four months to take Plaintiff's complaints seriously by implementing a plan outside of Plaintiff's educational plan which did not address instances of bullying and harassment and deliberately chose not to.

143. Approximately four months following Plaintiff's exhaustion from bully warranting refraining from attending school, and drastically decreasing Plaintiff's in-person requirement, Plaintiff still faced bullying and was bombarded on April 27th, 2022 by a repeatedly reported bullying offender.

144. Defendant acted recklessly in conscious disregard of and with deliberate indifference to the risk of Plaintiff's safety.

145. As a direct result, Plaintiff was sexually harassed and assaulted at LMS.

146. Defendant's conduct shocks the conscious.

147. Defendant's actions, even following the incident on April 27th, 2022 were intentional, willful, wanton, and displayed a deliberate, reckless, and callous indifference to Plaintiff's federally protected rights.

148. As a direct and proximate result of Defendant's deliberate indifference to known acts of constitutional deprivation, Plaintiff suffered severe damages, almost costing Plaintiff his life. Damages include but are not limited to denial of access to educational environment free from sexual harassment and abuse in an educational, physical, and psychological manner, trauma from attempted suicide attempt, pain and suffering, mental anguish and loss of enjoyment of life, as well as, past, present, and future medical expenses related to such injuries.

149. Plaintiff is entitled to recover from Defendant his reasonable attorneys' fees and expenses according to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests the Court enter judgement in his favor against Defendant Legleiter for compensatory damages, for attorneys' fees and expenses according

to 42 U.S.C section 1988(b), for costs, and for such other and further relief as it deems and fair and equitable in the circumstances.

## COUNT VI:
## NEGLIGENCE AGAINST DEFENDANT BLUE VALLEY AND DEFENDATN LEGLEITER

150. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

151. Because Blue Valley is an official of the state of Kansas, Johnson County, the city of Leawood at all times relevant to this claim, Defendant was acting under color of state law in their supervision and control over the students.

152. Defendant has a duty of care to protect students in their jurisdiction from harm, including sexual harassment and abuse.

153. Defendant Legleiter, during the relevant time, was an employee of Defendant, a governmental entity, and acting under color of law.

154. Defendant Legleiter has a duty of care to protect students in their jurisdiction from harm, including sexual harassment and abuse.

155. While policies and procedures specifically dedicated to the safety of trans and homosexual students does not exist towards the protection of rights under gender and sex equality, there are several nondiscretionary policies that were brought to Defendants' attention by Plaintiff that were not followed.

156. Plaintiff linked via email multiple board policies defining Plaintiff's experiences to be within the scope of their definition, which according to said policies, should prompt immediate intervention, investigation, and resolution attempt between all parties involved – none of which happened, and the lack of attention to the aforementioned policy left plaintiff confused as to where to turn to next to receive the promises made by Defendants uphold their duties and protect students' rights.

157. Defendants' breach of duty through their lack of follow through and attention towards this matter resulted in Plaintiff being publicly, sexually assaulted, resulting in a suicide attempt later that day.

158. As a direct and proximate result of Defendants' deliberate indifference to known acts of constitutional deprivation, Plaintiff suffered severe damages, almost costing Plaintiff his life. Damages include but are not limited to denial of access to educational environment free from sexual harassment and abuse in an educational, physical, and psychological manner, trauma from attempted suicide attempt, pain and suffering, mental anguish and loss of enjoyment of life, as well as, past, present, and future medical expenses related to such injuries.

WHEREFORE, Plaintiff prays for judgement against Defendants on all counts of this complaint, for compensatory damages, including monetary losses, emotional pain and suffering, loss of enjoyment of life and other non-monetary losses, punitive damages, equitable relief, including the value of fringe benefits, costs expended, reasonable attorney's fees and expert fees and expenses, pre-judgement and post judgement interests, and for such other and further relief the court deems just and proper.

## DEMAND FOR JURY TRIAL

Demand is hereby made for trial by jury in this case.

April 27, 2024                          Respectfully submitted,

                                        By:   LAW OFFICE OF STEPHEN R. WILLIAMS, LLC

                                              /s/ Stephen R. Williams
                                              Stephen R. Williams        KS#78956
                                              4520 Main Street, Suite 700
                                              Kansas City, MO 64111
                                              Office: 816.286.6047
                                              Fax: 816.756.1999
                                              stephen@srwilliamslaw.com

                                              ATTORNEYS FOR PLAINTIFF