IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

VIRGINIA FRANZESE,

        Plaintiff,

        v.

USD 229 BLUE VALLEY, et al.,

        Defendants.

Case No. 2:24-cv-02173-HLT-GEB

## MEMORANDUM AND ORDER

Plaintiff Virginia Franzese has a child (O.O.) who is a transgender male.[1] O.O. was a student at Leawood Middle School (LMS). Plaintiff alleges students at LMS bullied and sexually harassed O.O. because of O.O.'s gender identity and Defendants refused to take action to remedy the situation. Plaintiff brings Title IX and § 1983 equal protection and due process claims on behalf of O.O. against Defendants Chris Legleiter (the principal of LMS) and the Blue Valley School District (District). Defendants seek judgment on the pleadings on some of Plaintiff's § 1983 claims. Doc. 29. They argue that they owed no constitutional duty to protect O.O. from bullying or sexual harassment and that Plaintiff's allegations are insufficient to state a § 1983 municipal liability claim against the District for failure to train. The Court agrees, grants the motion, and grants judgment for Defendants on Counts III and V.

---

[1] The First Amended Complaint does not define "transgender." The Court understands this term to refer to a person who identifies with a gender different from the sex assigned at birth. *See Karnoski v. Trump*, 926 F.3d 1180, 1187 n.1 (9th Cir. 2019); *see also Bostok v. Clayton Cnty., Ga.*, 590 U.S. 644, 686 n.6 (2020) (Alito, J. dissenting) ("The American Psychological Association describes 'transgender' as 'an umbrella term encompassing those whose gender identities or gender roles differ from those typically associated with the sex they were assigned at birth.'" (alterations omitted)); *cf. Copeland v. Ga. Dep't of Corrections.*, 97 F.4th 766, 770 (11th Cir. 2024) (a transgender person is one who "consistently and persistently" identifies with a gender different from the sex assigned at birth).

**I.     BACKGROUND**[2]

O.O. was a student at LMS during the 2021-2022 and 2022-2023 school years. O.O. is a transgender male. O.O. was bullied and sexually harassed by other students at LMS. The bullying and harassment at LMS during the 2021-2022 school year were so devastating to O.O.'s mental health that O.O. attempted suicide and received in-patient mental health treatment. The bullying and harassment resumed when O.O. went back to LMS for the 2022-2023 school year. In the absence of measures to protect O.O. from harm, Plaintiff ultimately withdrew O.O. from the school.

More specifically, O.O. started at LMS as a 6th-grade student during the 2021-2022 school year. O.O. had a "504 plan" that included that O.O. identified as a transgender male and included O.O.'s new name. There was a slow transition of O.O.'s 504 plan, which resulted in O.O. being identified by O.O.'s birth name during roll call in front of the entire class, which resulted in social anxiety and an awareness of O.O.'s identity change. LMS students also created a 6th-grade Snapchat group that included O.O. and shared messages that were transphobic and homophobic in nature. Plaintiff reported the comments to Legleiter and requested some form of sensitivity training. Legleiter put O.O. in contact with LMS's social worker but did not investigate or conduct the requested training.

O.O. continued to experience bullying. In November 2021, O.O. expressed suicidal ideations to the social worker and was officially diagnosed with depression caused by the bullying and harassment and given medication. Plaintiff took O.O. to be evaluated at a hospital for a safety assessment because O.O. engaged in self-harm. Plaintiff informed the District and Legleiter of

---

[2] The Court, as it must, "assume[s] the truth of the well-pleaded allegations" in the First Amended Complaint "and draw[s] all reasonable inferences in [Plaintiff's] favor." *Joritz v. Univ. of Kan.*, 2022 WL 817968, at *2 (10th Cir. 2022). The Court carefully read the First Amended Complaint and includes this summary for context. But the Court considers all the allegations in the First Amended Complaint when resolving the motion.

O.O.'s diagnosis. Legleiter did not put in place any measures to prevent O.O. from being bullied or harassed.

In December 2021, a student transferred to LMS who was a known bully. This student targeted O.O. with bullying at school and on social media about O.O. being transgender. Plaintiff raised concerns to Legleiter, the District, and Shelly Nielson (Legleiter's supervisor) about the continued bullying and requested action. But Legleiter did not take any action. The new student went on to spread rumors that O.O. was a pedophile and intended to commit an act of "terrorism" at school. These rumors resulted in the 6th-grade class being evacuated from the school for safety reasons. Plaintiff again requested action, but the lack of support and the stress of the incident caused O.O. to withdraw from LMS for the remainder of the semester.

The new semester brought renewed struggle. Legleiter refused to implement safety measures for O.O. And once classes resumed so did O.O.'s bullying. O.O.'s suicidal ideations also resurfaced in January 2022. And it wasn't until after an incident in February in which older students bullied O.O. that Legleiter finally agreed (after much pushback) to put O.O. on a reduced schedule that included a mid-day break. This measure proved ineffective. And, as before, O.O. remained a target for bullying on social media and at school.

In April 2022, another student yelled at O.O. in the cafeteria, calling O.O. a "faggot" and teasing O.O. with O.O.'s birth name. That evening O.O. unsuccessfully attempted suicide and was hospitalized. O.O. was admitted to an in-patient mental health treatment facility for nearly two weeks. Legleiter's response to the incident was to suspend the other student for a day and to offer relief from O.O.'s academic responsibilities by implementing a pass/fail evaluation method. Legleiter refused Plaintiff's requests for sensitivity training and did not offer further resources for ensuring O.O.'s safety.

Plaintiff met with administration before the 2022-2023 school year to discuss a safety plan for O.O. Plaintiff's requests were rejected, and LMS told Plaintiff no additional protections would be implemented beyond what the school already did to prevent other forms of bullying. Plaintiff's request that O.O. not take classes with students who had bullied O.O. during the 2021-2022 school year was also rejected, and O.O. was assigned to take classes with some of these students. The bullying and harassment resumed. Legleiter again took no action in response. And Plaintiff ultimately withdrew O.O. from LMS.

Plaintiff alleges that prior to O.O.'s bullying and harassment another student in the District but not at LMS was similarly bullied and harassed. Plaintiff alleges this student (who was also transgender) was referred to by the wrong name, called a "faggot," told that transgender students "are a threat," and yelled at. Plaintiff alleges that this student also attempted suicide and that there was a failure to respond to this student's bullying and harassment despite complaints.

## II.     LEGAL STANDARD

The standard for a Rule 12(c) motion is the same as the one for a Rule 12(b)(6) motion. *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003). A claim survives a Rule 12(c) motion when it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if it contains sufficient factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and

plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

## III. ANALYSIS

Defendants move for judgment on the pleadings on Counts III and V. Count III is a § 1983 claim against the District based on a failure-to-train-or-supervise theory of municipal liability. Defendants contend Count III fails because Plaintiff has not alleged that a failure to train in response to a pattern of student-on-student sexual harassment caused a violation of O.O.'s constitutional rights. Count V is a § 1983 claim based on Legleiter's failure to protect Plaintiff from bullying. Defendants argue Count V fails because Defendants had no 14th Amendment due process obligation to protect O.O. from bullying. The Court analyzes the claims in reverse order, agrees with Defendants, and grants the motion.

### A. Count V – Failure to Protect.

Plaintiff's allegations are straightforward. Plaintiff avers Defendants knew that O.O. was in danger of being harmed by fellow students but failed to take appropriate action. Defendants contend this claim is not legally cognizable because they had no 14th Amendment due process obligation to protect O.O. from bullying.

The Court agrees that Plaintiff's § 1983 failure-to-protect claim is not cognizable. Legleiter had no duty under the 14th Amendment's due process clause to protect O.O. from another student's sexual harassment or bullying. It is well-established that a school has no due process-based obligation to protect students from mistreatment at the hands of other students absent a special relationship or the existence of danger that the school has created. Compulsory school attendance does not create a special relationship. *Graham v. Indep. Sch. Dist. No. I-89*, 22 F.3d 991, 994-95 (10th Cir. 1994) (explaining that compulsory school attendance does not entail a custodial

relationship that imposes a duty to protect from foreseeable danger). And placement and continued enrollment in a school of a student whose presence might present a foreseeable risk of harm to a particular student does not create the existence of danger. *Id.* at 995 (finding the danger creation exception inapplicable when student's murder by another student was foreseeable because of prior threats of violence and a warning that the student was on school grounds with a firearm).[3] Plaintiff therefore fails to state a plausible § 1983 claim against Defendants for failing to protect O.O. from other students.[4]

### B.   Count III – Failure to Train.

Plaintiff alleges the District is responsible for 14th Amendment violations of O.O.'s equal protection and due process rights because its failure to train its staff in specific skills needed to respond to bullying caused harm to O.O.

Unlike for common law torts, vicarious liability does not exist for § 1983 claims. *Monell v. Dep't of Soc. Servs. N.Y.*, 436 U.S. 658, 694 (1978). Instead, a state entity (like a school district) can only be liable under § 1983 if a plaintiff demonstrates (1) an underlying violation of its federal constitutional rights and (2) a custom or policy that is <u>itself</u> responsible for the violation. *Crowson v. Wash. Cty., Utah*, 983 F.3d 1166, 1186-87 (10th Cir. 2020). The custom or policy must be the "moving force" behind the violation. *T.R. v. Howard*, 2023 WL 7279336, at *13 (D.N.M. 2023). And a "direct causal link between the custom or policy" and the violation must exist. *Id.*

---

[3] Plaintiff doesn't directly respond to Defendants' Count V arguments. But Plaintiff does rely on *Lewis v. Blue Springs School District*, 2017 WL 5011893 (W.D. Mo. 2017), for the proposition that knowledge of bullying and its effects could give rise to a state created danger. *Lewis* is contrary to the Tenth Circuit's opinion in *Graham* on this point. *Graham* holds that the mere foreseeability of danger or knowledge of dangerous circumstances are not sufficient. 22 F.3d at 995. *Graham* is binding. The Court does not follow *Lewis* or adopt its reasoning.

[4] As is explained in greater detail in the following section, an underlying violation of O.O.'s federal constitutional due process rights is necessary for the District to be liable for violating those rights under § 1983. There's nothing for the District to be liable for without this. Plaintiff's due process claim fails as to Legleiter. There is no underlying due process violation. There is therefore no basis for § 1983 liability against the District.

A "failure to train is not a standalone legal claim [under this framework]." *Id*. Rather, it is a way of establishing a type of custom or policy based on deliberate indifference. The idea is that when the "need for more or different training" of a state entity's employees is "so obvious, and the inadequacy so likely to result in the violation of [the plaintiff's] rights, that the [state entity's] policymakers can reasonably be said to have been deliberately indifferent to the need for additional training." *Id.* at *14. (internal quotation marks omitted). Deliberate indifference to the need to train or supervise means that the district's policymakers had "actual or constructive notice that failing to train or supervise its employees was substantially certain to result in a constitutional violation and that it deliberately or consciously ignored that risk." *Id*. (internal quotation marks omitted). And "notice is established by proving the existence of a pattern of tortious conduct . . . ." *Id.* (internal quotation marks omitted).

Plaintiff's due-process-based failure-to-train theory fails for the same reason that Count V fails. Plaintiff does not allege a plausible violation of O.O.'s due process rights from a failure to protect O.O. The District can only be liable under § 1983 for a failure to train if there has been an underlying violation of a constitutional right. *Crowson*, 983 F.3d at 1186. This is the first *Monell* element. And for the reasons given above, a failure to protect O.O. from student bullies and harassers does not amount to a due process violation.

Plaintiff's failure-to-train claim is not premised solely on the deprivation of O.O.'s due process rights. Plaintiff also alleges O.O.'s equal protection rights were violated because the District's employees acquiesced to other students' sexual harassment of O.O. by failing to remedy it. Although there is no due process obligation to protect O.O. from student bullies and harassers, a failure to remedy student-on-student sexual harassment <u>can</u> violate the 14th Amendment's equal protection clause <u>under certain circumstances</u>. *Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238,

1250-51 (10th Cir. 1999) (failure to reasonably respond to student-on-student sexual harassment can support a § 1983 as an equal protection violation).

But even assuming that those circumstances were present here and that O.O.'s equal protection rights were violated by District employees' failure to remedy, Plaintiff still has to show that the District knew (or should have known) that this failure to remedy was the "substantially certain" result of the District's failure to adequately train its employees. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317-18 (10th Cir. 2002). This means Plaintiff must show either that the District knew about a pattern or practice of failing to respond to student-on-student sexual harassment due to inadequate training or that the failure to remedy O.O.'s sexual harassment was the "plainly obvious" result of inadequate training. *Id.*

This is where Plaintiff's claim founders. First, the complaint's allegations don't make it "plainly obvious" that Legleiter's failure to remedy the sexual harassment O.O. was enduring was caused by Legleiter's deficient training. Plaintiff refers to "sensitivity training" in multiple places in her operative complaint. But Plaintiff does not plausibly allege that the absence of sensitivity training caused Legleiter's failure to remedy O.O.'s harassment. Second, assuming the District knew about O.O.'s harassment and the harassment of another student at a different school, a small number of failures to adequately remedy student-on-student sexual harassment does not constitute a "pattern" for purposes of *Monell* liability under § 1983. *See Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1124-25 (10th Cir. 2008); *see also City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion) (Rehnquist, J.) (jury instructions permitting an "infer[ence of] a thoroughly nebulous 'policy' of 'inadequate training' on the part of the municipal corporation from the single incident . . . and . . . [an] inference that the 'policy' was the cause of the incident" eviscerated the limitation inherent in *Monell*). In short, Plaintiff's complaint does

not plausibly allege that deficient training caused the District's employees to violate O.O.'s equal protection rights by acquiescing to student harassment. And the Court cannot identify any non-conclusory allegations from which it could draw such an inference. Plaintiff's equal-protection-based failure-to-train theory fails to satisfy *Monell*'s second element.

## IV. CONCLUSION

The Court grants Defendants partial motion for judgment on the pleadings. Plaintiff fails to state cognizable claims under § 1983 against Legleiter for failing to protect O. O. from bullying and harassment and against the District for failing to adequately train or supervise its employees.

THE COURT THEREFORE ORDERS that Defendants' motion for partial judgment on the pleadings (Doc. 29) is GRANTED. The Court awards judgment for Defendants on Counts III and V of Plaintiff's First Amended Complaint.

IT IS SO ORDERED.

Dated: February 19, 2025                    /s/ *Holly L. Teeter*
                                            HOLLY L. TEETER
                                            UNITED STATES DISTRICT JUDGE